UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA C. CARLSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 20 C 2323 |
| CHAMPION MORTGAGE COMPANY, A/K/A ) | |
| NATIONAL STAR LLC D/B/A CHAMPION ) | Judge Thomas M. Durkin |
| MORTGAGE COMPANY, AND NATIONSTAR ) | |
| HECM ACQUISITION TRUST 2016-1 ) | |
| WILMINGTON SAVINGS FUND SOCIETY, ) | |
| FSB, NOT INDIVIDUALLY, BUT SOLELY AS ) | |
| TRUSTEE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lisa C. Carlson ("Carlson") brought this action against defendants Champion Mortgage Company, also known as Nationstar Mortgage LLC, doing business as Champion Mortgage Company, and Nationstar HECM Acquisition Trust 2016-1 Wilmington Savings Fund Society, FSB as trustee (together, "Champion Mortgage"), alleging unjust enrichment and conversion in connection with her eviction from her deceased mother's home. Champion Mortgage moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). R. 9. For the following reasons, that motion is denied.

**Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must

provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Carlson's mother Wanda B. Carlson ("Wanda") had a reverse mortgage held by Champion Mortgage on a property located at 1228 North Cascade Court, Lake Forest, Illinois (the "property"). R. 1, Ex. 1 ¶¶ 7, 9. Carlson was the sole beneficiary of a land trust that held the ownership interest in the property (the "land trust"). *Id.* ¶ 8. When Wanda died, Champion Mortgage filed a mortgage foreclosure action on the property pursuant to the terms of the reverse mortgage, naming the land trust as a defendant.

*Id.* ¶¶ 6, 7. Carlson was granted leave to intervene in the proceeding as an interested party. *Id.* ¶ 10. Ultimately, the property was sold in foreclosure to Champion Mortgage, and the sale was confirmed by court order on June 10, 2016. *Id.* ¶¶ 12, 13.

Champion Mortgage sent Carlson a letter later that month indicating that it was responsible for all repairs to the property. *Id.* ¶¶ 9, 15. Various Champion Mortgage representatives had also assured Carlson, who had moved into the property at some point after Wanda's death, that she would be reimbursed for any necessary maintenance, repairs, and improvements she made. *Id.* ¶¶ 19, 25, 27-29. Accordingly, Carlson spent $47,203.03 on such repairs and improvements[1] even though the property at that point was owned, marketed, and eventually sold by Champion Mortgage. To date, Champion Mortgage has not reimbursed her. *Id.* ¶¶ 38-39.

In the meantime, Champion Mortgage filed a forcible entry and detainer action against Carlson ("eviction action"). *Id.* ¶ 35. An eviction order was entered against Carlson, and a notice was posted on the property indicating an eviction date of May 21, 2018. *Id.* ¶¶ 42, 59. Carlson had already hired movers prior to receiving the notice, and those movers had packed the vast majority of her personal items in boxes and were scheduled to move the boxes and Carlson's remaining property out of the home on May 21. *Id.* ¶ 44. Carlson's lawyer therefore contacted counsel for Champion Mortgage to request that the eviction date be continued two days so that Carlson

---

[1] Such repairs and improvements included: a new furnace; new air conditioning system; new sump pump; new gutters to "prevent flooding through a collapsing foundation;" caulking in the ceiling and foundation to prevent flooding; and landscaping. *Id.*

3

could move out without interference that day as she had previously planned. *Id.* ¶ 45. Counsel for Champion Mortgage declined to continue the eviction date, but represented that Champion Mortgage would not send its own movers to the property that day. *Id.* ¶ 46.

Carlson's movers arrived at the property at 8:00 a.m. on May 21 and began removing Carlson's personal property and furniture. *Id.* ¶ 47. But another moving company called U.S. Movers arrived shortly thereafter, and immediately began loading Carlson's previously packed boxes into its own truck, despite Carlson's pleas to the contrary. *Id.* ¶ 48. According to Carlson, the Lake County Sheriff also called a representative of Champion Mortgage and asked that it send its movers back. But the representative declined. *Id.*

Carlson alleges that contrary to Lake County Sheriff eviction procedures, no Champion Mortgage representative was present at the property on the day of the eviction to supervise and ensure that Carlson was given the allotted 24 hours to move her personal belongings. *Id.* ¶ 50. Instead, at 2:00 p.m., U.S. Movers representatives told Carlson that "the bank" decided she needed to be evicted immediately and that her movers should be stopped from removing her personal property. *Id.* ¶ 52. Carlson was thereafter physically escorted off the property without retrieving her personal belongings that remained inside the house, some of which Champion Mortgage later used to stage the home for sale. *Id.* ¶¶ 53-56. Carlson's personal property, which she alleges is worth in excess of $50,000, was never returned to her. *Id.* ¶¶ 57, 60.

4

## Analysis

Carlson's complaint purports to state claims under Illinois law for unjust enrichment and conversion. Champion Mortgage moves to dismiss both claims. The Court addresses each claim in turn, beginning with unjust enrichment.

### I. Unjust Enrichment

Carlson's unjust enrichment claim is based on her allegation that Champion Mortgage failed to reimburse her for the necessary improvements she made to the property; improvements from which Champion Mortgage benefitted as property owner when selling the property. To state a claim for unjust enrichment under Illinois law, a plaintiff must "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).

At the outset, Champion Mortgage argues that Carlson's unjust enrichment claim fails because unjust enrichment is not a separate cause of action under Illinois law. The Court recognizes that the case law is less than clear on this subject, and Champion Mortgage acknowledges this in its reply brief. *See* R. 19 at 2 ("whether unjust enrichment is an independent cause of action or whether it must be tied to an underlying claim in tort, contract, or statute is unsettled in Illinois"). But the Seventh Circuit in *Cleary* observed that "[t]he Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action." *Id.* at 516 (citing *Raintree*

5

*Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004), in which the Illinois Supreme Court recognized the viability of an unjust enrichment claim despite the lack of an underlying cause of action grounded in tort, contract, or statute). In so stating, the court noted:

> Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is *often* due to some improper conduct by the defendant. And *usually* this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute. So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim.

*Id.* at 517 (emphasis added). Champion Mortgage clings to this language, arguing that Carlson's claim must fail because unjust enrichment "typically requires some sort of underlying improper conduct by the defendants," and Carlson has not alleged a related claim concerning such improper conduct here. R. 19 at 2. But the problem for Champion Mortgage is that "usually" and "often" are not "always." And even though the Seventh Circuit recently said in *Benson* that "there is no stand-alone claim for unjust enrichment" under Illinois law, that case involved an underlying tort claim, so the court discussed neither *Raintree* nor *Cleary*, which remain good law. *Benson v. Fannie May Confection Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) ("Because Benson failed to state a claim under the ICFA, she also failed to state a claim for unjust enrichment."). Accordingly, the Court declines to dismiss the unjust enrichment claim on this basis.

6

Champion Mortgage also argues that Carlson's unjust enrichment claim is barred by the doctrine of collateral estoppel. For collateral estoppel to apply, Champion Mortgage must establish that: "(1) the issue decided in the prior litigation is identical to the one presented in the current case, (2) there was a final adjudication on the merits in the prior case, and (3) the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior litigation." *Pine Top Receivables of Ill., LLC v. Transfercom, Ltd.*, 77 N.E.3d 657, 659 (Ill. App. Ct. 2017). In addition, the party against whom the estoppel is asserted must have had a full and fair opportunity to litigate the issue in the earlier action and "an injustice must not be done to him under the circumstances of the later case." *Hayes v. State Teachers Certification Bd.*, 835 N.E.2d 146, 155 (Ill. App. Ct. 2005).

Champion Mortgage points to the fact that Carlson brought an equitable lien as an affirmative defense in the eviction action based on the repairs she made to the property, and argues that because that affirmative defense was dismissed by the eviction court, it was decided on its merits and cannot be raised again here.[2] The Court disagrees. Indeed, in dismissing Carlson's equitable lien—a dismissal that was without prejudice—the eviction court specifically contemplated that Carlson might bring an action for reimbursement or damages based the improvements, stating:

> I don't think [the equitable lien affirmative defense] gives [Carlson] entitlement to continued possession of the property. It might give her

---

[2] Collateral estoppel is an affirmative defense, and thus ordinarily raised in an answer and then in a motion for judgment on the pleadings under Rule 12(c). *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). But the same legal standard applies under Rule 12(c) and Rule 12(b)(6), so it is appropriate to consider the argument here. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

> some claim of entitlement to be reimbursed, either on a damages claim, or if the property is ever sold. So I don't think that the equitable lien theory is an appropriate defense to the forcible entry and detainer action.

R. 10, Ex. 2 at 11. In affirming the trial court's ruling, the Illinois appellate court similarly found that the equitable lien had "no bearing on [Carlson's] right to possession" and "is not a valid affirmative defense." R. 17, Ex. 1 ¶ 19. Obviously, then, neither court ruled on the merits of Carlson's equitable lien, which differs from the unjust enrichment claim she brings now in any case. Champion Mortgage's motion to dismiss the unjust enrichment claim is denied.

## II. Conversion Claim

Carlson's conversion claim is based on Champion Mortgage's alleged retention of Carlson's personal property. To state a claim for conversion, a plaintiff must allege: "(1) unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right to the property; (3) plaintiff's right to immediate possession of the property; absolutely and unconditionally; and (4) a demand for possession of the property." *General Motors Corp. v. Douglass,* 565 N.E.2d 93, 96-97 (Ill. App. Ct. 1990).

Champion Mortgage contends that the conversion claim fails for three reasons. First, the claim focuses on the alleged wrongdoing of U.S. Movers, not Champion Mortgage. To this point, Champion Mortgage highlights Carlson's allegation that counsel for Champion Mortgage represented that Champion Mortgage would not send its own movers to the property on eviction day. R. 10 at 8 (citing R. 1, Ex. 1 ¶ 46). But it is more than plausible from Carlson's allegations that Champion Mortgage

8

did so anyhow, and that U.S. Movers acted at its direction. Indeed, the complaint alleges that U.S. Movers representatives moved Carlson's personal property at the direction of "the bank," and that the Lake County Sheriff asked Champion Mortgage to send its movers back. R. 1, Ex. 1 ¶¶ 46, 48, 52; *see also Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) ("The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal.").

Next, Champion Mortgage argues that Carlson did not have an immediate right to possess the property because the removal was authorized by the police, citing *Dix v. Edelman Services, LLC*, in which the plaintiff alleged that the mover was authorized by police officers to remove the plaintiff's property, and that two officers restrained him in the process. 2018 WL 1115937, at *1 (N.D. Ill. Feb. 28, 2018). But Carlson does not allege that the Lake County Sheriff authorized the removal of her property. To the contrary and as noted, she alleges that the Sheriff contacted Champion Mortgage and requested that U.S. Movers "be sent back." R. 1, Ex. 1 ¶ 48. And she also alleges that the eviction order "did not entitle Champion Mortgage and/or its agents to assume control, dominion, or ownership" of the personal property at issue. *Id.* ¶ 59. So this argument also fails.

Finally, Champion Mortgage contends that Carlson failed to allege that she made a demand for the return of her property. But Carlson alleges that she pleaded with U.S. Movers to allow her own movers to load all her boxes in their moving truck,

9

and that she "steadfastly told" U.S. Movers personnel that "they had no right to take her property." R. 1, Ex. 1 ¶¶ 48, 58. This is sufficient. *See Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 742 (7th Cir. 2016) ("The primary purpose of the [demand] requirement is to facilitate the return of the desired property to the plaintiff before being required to submit to unnecessary litigation.") Champion Mortgage's motion to dismiss the conversion claim is therefore denied.

## Conclusion

For the foregoing reasons, Champion Mortgage's motion to dismiss is denied, R. 9. The parties are directed to submit a joint status report in the format provided on the Court's webpage for new cases by December 23, 2020.

ENTERED:

*Thomas M. Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: December 4, 2020