UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA C. CARLSON,<br><br>        Plaintiff,<br><br>  v.<br><br>CHAMPION MORTGAGE COMPANY, A/K/A NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY; AND NATIONSTAR HECM ACQUISITION TRUST 2016-1 WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE,<br><br>        Defendants. | No. 20 CV 2323<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Lisa Carlson ("Carlson") brought this action against Champion Mortgage Company, a former subsidiary of Nationstar Mortgage LLC ("Nationstar"), in connection with foreclosure and eviction proceedings that Nationstar initiated on Carlson's mother's home while Carlson was living there after her mother's death. After a three-day bench trial, the Court entered judgment in favor of Nationstar. Carlson moves to vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b)(3). R. 128. For the following reasons, that motion is denied.

**Background**

Carlson's mother, Wanda B. Carlson ("Wanda"), obtained a reverse mortgage on her home located at 1228 North Cascade Court, Lake Forest, Illinois ("the Property"). Nationstar was the loan servicer of the reverse mortgage, and Carlson was the sole beneficiary of a land trust that held the ownership interest in the

1

Property. Wanda passed away in June 2012, and Carlson immediately moved into the home. Wanda's death constituted a default under the terms of the reverse mortgage. Between September 2013 and May 2018, Carlson and Nationstar were in protracted foreclosure and eviction proceedings. During these proceedings, Carlson continued to live at the Property without paying any mortgage, rent, or property taxes. Despite these proceedings, Carlson made repairs and improvements to the Property. Carlson was evicted on May 21, 2018, and the Property was sold at auction on February 20, 2020 for $308,700.

On March 10, 2020, Carlson filed this lawsuit alleging, among other things, that Nationstar was unjustly enriched because Carlson was not reimbursed for the repairs and improvements she made to the Property. During discovery, Carlson issued written discovery and noticed Nationstar's Rule 30(b)(6) deposition. Relevant here, Deposition Topic No. 5 included Nationstar's "eventual application for reimbursement and/or payment of expenses and claims made pursuant to the reverse mortgage program," R. 124-32 at 2, and Magistrate Judge Finnegan limited Document Request No. 6 to "documents and communications about improvements made" to the Property, R. 58 ¶ 2.[1] Carlson also issued a FOIA request to the U.S. Department of Housing and Urban Development ("HUD"). Through this discovery,

---

[1] The request read: "Any and all communications, including documents attached with such communications, between the defendants and/or their agents and any insurance company, HUD, or government agency relating to the reverse mortgage on the real estate located at 1228 Cascade Court, Lake Forest, Illinois, which was triggered on the death of Wanda Carlson, or the insurance payable under the insurance policy insuring the reverse mortgage." R. 128-1 at 9.

2

Carlson obtained Nationstar's application to HUD for insurance benefits in the amount of $383,513.78 and testimony from Nationstar's corporate representative, Jason George ("George"), that he was unsure whether Nationstar had received any insurance benefits payments from HUD.

Eventually, the case proceeded to a three-day bench trial, where George testified that he checked back to February 20, 2020, the date the property was sold, and did not find any payments received from HUD. On August 8, 2023, the Court issued its Findings of Fact and Conclusions of Law, holding that Carlson did not prove her unjust enrichment claim. R. 126 at 7–12. Specifically, the Court found that Nationstar did not receive any benefit from Carlson's repairs and improvements because Nationstar did not receive a higher sales price due to the improvements and its reimbursement request to HUD did not include the improvements Carlson had made. The Court also found that Nationstar's refusal to reimburse Carlson did not violate principles of justice, equity, and good conscience because she lived in the home mortgage-, rent-, and property tax-free for six years and made the improvements and repairs to make the home livable and comfortable for herself, not to benefit Nationstar or based on any promises by Nationstar. Judgment was entered for Nationstar on August 23, 2023.

On April 12, 2024, Carlson issued another FOIA request to HUD, this time specifically requesting "advice of payment letter[s] and any other correspondence relating to payout of insurance monies." R. 128-1 at 4. HUD produced two advice of payment letters, which show that Nationstar received, on December 7, 2018 and

3

March 19, 2019, two payments from HUD totaling $267,605.13. Carlson then filed this motion to vacate the judgment pursuant to Rule 60(b)(3).

## Legal Standard

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). In order to obtain relief under Rule 60(b)(3), the moving party "must demonstrate by clear and convincing evidence that: (1) the party maintained a meritorious claim at trial; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its case at trial." *Fields v. City of Chicago*, 981 F.3d 534, 558 (7th Cir. 2020) (citation and internal quotation marks omitted). "In considering these requirements, a court must weigh the competing policy interests of the finality of judgment against fundamental fairness in light of all of the facts." *Lonsdorf v. Seefeldt*, 47 F.3d 894, 897 (7th Cir. 1995).

## Discussion

Carlson argues that Nationstar committed misconduct by withholding the advice of payment letters and that George misrepresented at his deposition and at trial that Nationstar had not received any payments from HUD. "[T]he failure to disclose information within the scope of proper discovery requests can, in certain circumstances, constitute grounds for a new trial" under Rule 60(b)(3). *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 758 (7th Cir. 1994). "In order to obtain this dramatic relief,

4

the movant must demonstrate both that misconduct occurred and that it prejudiced him." *Id.*; *see also F.T.C. v. QT, Inc.*, 249 F.R.D. 305, 309 (N.D. Ill. 2008) ("The moving party does not need to show that he would have won the case had the fraud or misconduct not occurred, but rather he need only show, by clear and convincing evidence, that it affected his ability to present his case.").

Here, Nationstar did not engage in misconduct by not producing the advice of payment letters. In response to Carlson's Document Request No. 6, Nationstar produced documents "only to the extent it applies to documents and communications about improvements made to the property," R. 128-1 at 9, which was consistent with Magistrate Judge Finnegan's order, R. 58 ¶ 2. Nationstar's application to HUD for insurance benefits payments did not include claims for the improvements Carlson made on the Property. *See* R. 126 at 9. Accordingly, by extension, the advice of payment letters, which showed how much HUD paid in insurance benefits, did not relate to "improvements made to the property," so they did not fall within the document request. Carlson also never issued supplemental discovery requests to Nationstar seeking any advice of payment letters. Thus, Nationstar did not engage in misconduct by not producing the advice of payment letters.

However, determining whether George's testimony about the payments Nationstar received from HUD during his deposition and at trial are misrepresentations is a closer question. George was asked directly during his deposition and at trial whether Nationstar received insurance benefits payments from HUD. At his deposition, George responded that he was unsure if Nationstar had

5

received any payments. At trial, George stated he "went and checked" and Nationstar "ha[d] not received the funds from HUD." R. 128-1 at 90. The advice of payment letters show indisputably that Nationstar received payments from HUD in December 2018 and March 2019.

Rule 60(b)(3) applies "to both intentional and unintentional misrepresentations." *Fields*, 981 F.3d at 558.

Nationstar argues that George's answers were not misrepresentations. As to his deposition testimony, Nationstar claims George had no duty to prepare to answer this line of questioning, which was irrelevant to unjust enrichment. But as Nationstar's corporate representative, George was charged with testifying about information "known or reasonably available to" the corporation. *See* Fed. R. Civ. P. 30(b)(6). By the same token, Nationstar had a duty to prepare George to "adequately testify" not only on matters known to him but also on subjects reasonably known by Nationstar. *See Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 (N.D. Ill. 2008) (citation omitted). The deposition topics included Nationstar's "eventual application for reimbursement and/or payment of expenses and claims made pursuant to the reverse mortgage program." R. 124-32 at 2. George may not have been personally aware of any payments received from HUD, but this was a subject reasonably known by Nationstar and, based on the deposition notice, it should have prepared George to answer questions related to that subject.

Second, as to his trial testimony, George testified that Nationstar "ha[d not] received funds from HUD yet." R. 128-1 at 89. When asked whether he knew one way

6

or the other about Nationstar receiving any funds from HUD, George clarified he checked "all the way back to when the property was sold" but that Nationstar "ha[d] not been paid from HUD since [then]." *Id.* at 90. In response to a question about Nationstar being in line to receive funds from HUD, George stated he was not sure what the holdup was, but that it may "depend[ ] on the outcome of the litigation." *Id.* George's standalone testimony was unqualified, and in that sense, arguably misleading.

But the Court need not conclusively decide whether George's sworn statements at his deposition or at trial constitute misrepresentations under Rule 60(b)(3). Because even if they did, Carlson does not demonstrate by clear and convincing evidence that she was denied the ability to fully and fairly present her case at trial. *See Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010) (even where fraud or misconduct is shown, it is "actionable only if it prejudices the adverse party") (citation omitted). Carlson had Nationstar's application to HUD where it claimed $383,513.78 in insurance benefits. The advice of payment letters showed the amount Nationstar eventually received from HUD, which was less than the full amount claimed. The application, and by extension the advice of payment letters, say nothing about the repairs or improvements nor show that Nationstar was reimbursed for any of the repairs or improvements Carlson made. Thus, the advice of payment letters do not serve to support her unjust enrichment claim. Accordingly, even if George's testimony about the payments Nationstar received from HUD were misrepresentations, there

7

was no resulting prejudice to Carlson—what she had was sufficient to fully present her case for unjust enrichment.

Carlson nonetheless contends that "[t]hese facts would have changed how [she] presented her case at trial." R. 128 at 15.[2] Carlson first argues she was prejudiced by George's allegedly perjurious testimony that Nationstar would have been better off if Carlson were not staying at the Property in the first place, which she says was "significant" to the Court's refusal to enter judgment for her. R. 134 at 6. But Carlson does not explain how this is a misrepresentation concerning the HUD payments or how this testimony affected the presentation of her case. Even then, Carlson misunderstands the Court's findings of fact and conclusions of law. The Court simply mentioned that Carlson caused delays in the foreclosure and eviction proceedings, which impaired Nationstar from selling the Property and receiving insurance payments from HUD sooner as part of the factual context. That fact was not part of the Court's determination that Nationstar's HUD claim did not include Carlson's repairs and improvements, such that there was no unjust enrichment.

Carlson also argues she was prejudiced because, she says, George testified that Nationstar was not allowed to realize any more money on the sale of the Property than what it was entitled to receive from HUD. *Id.* at 7. According to Carlson, this was the basis for George stating at trial that her improvements did not benefit

---

[2] Carlson does not argue that the alleged misrepresentations prevented her from impeaching George and rebutting the substantive evidence introduced at trial. *See Fields*, 981 F.3d at 555 (misrepresentations that are impeaching and contradict substantive evidence can fall under Rule 60(b)(2) and (3)).

8

Nationstar. Carlson contends that if this was Nationstar's position, then it was entitled to receive only $383,548.42, the amount it applied for from HUD, and not the $576,305.13 it received from the sale of the Property and the payments from HUD,[3] implying Nationstar reaped the benefits of Carlson's improvements by collecting more than what it was allowed to collect. *Id.* at 8. But Carlson also misunderstands George's testimony. George explained that Nationstar could retain the proceeds from the sale and then seek the remaining amount due on the mortgage from HUD. R. 128-1 at 183–84; *see also id.* at 117 (explaining that the maximum amount Nationstar could recover is around $600,000). And, as explained above, the payments from HUD did not include reimbursements for repairs or improvements made by Carlson.

Lastly, Carlson claims that she "would have testified that if she were faced with an eviction action as of June 3, 2016,[4] she would not have invested in the property or consented to a dual agency with Defendant's real estate brokers." R. 128 at 13. The letters, and the underlying HUD payments, have no bearing on this issue, and the Court does not see how the lack of evidence that Nationstar received payments from HUD prevented her from offering this testimony. In any case, the foreclosure sale was confirmed on June 10, 2016, and Carlson was served on July 26, 2016 with a notice of intent to file an eviction action. She was thus aware of a

---

[3] The sales price for the Property was $308,700 and the amount received from HUD was $267,605.13, for the total of $576,305.13.

[4] June 3, 2016 is the date the eviction proceeding should have been initiated under HUD regulations. *See* R. 132 at 13. Because Nationstar filed the eviction action on November 1, 2016, HUD reduced the amount it paid. *See id.*; R. 128-1 at 2–3.

9

potential eviction by July 26, 2016, yet chose to make repairs and improvements after that date anyways.

In all, Carlson has not adequately explained how the alleged misrepresentations prejudiced her or how the payments from HUD would have changed how she presented her case. *See Smith v. Siarnicki*, 397 F. App'x 250, 251 (7th Cir. 2010) (affirming the district court's denial of a plaintiff's Rule 60(b)(3) motion in part because the plaintiff "has not shown how the defendants' alleged fraud prevented him from fully and fairly presenting his case"); *A.J. by Julka v. Butler Ill. Sch. Dist. #53*, No. 17 C 2849, 2020 WL 3960444, at *6 (N.D. Ill. July 13, 2020) (denying Rule 60(b)(3) motion where, even assuming testimony was a misrepresentation and a failure to produce document in discovery was misconduct, plaintiffs did not establish that this conduct prejudiced their case). As such, Carlson has not demonstrated by clear and convincing evidence that she was prevented from fully and fairly presenting her case. On that basis, her motion is denied.[5]

## Conclusion

For the foregoing reasons, Carlson's motion to vacate the judgment is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 16, 2025

---

[5] In her reply brief, Carlson raises a host of new arguments. *See* R. 134 at 6–10. However, arguments raised for the first time in a reply brief are waived. *See Powell v. U.S. Bank Nat'l Ass'n*, No. 23-2573, 2024 WL 3812292, at *1 (7th Cir. Aug. 14, 2024) (citation omitted).

10